# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

AERION C. KING,

                    Plaintiff,

v.                                                    Case No. 17-CV-201-JPS

JON LITSCHER, CATHY JESS,
WARDEN SCOTT ECKSTEIN,
STEVE SCHUELER, JOHN KIND,
CATHERINE FRANCOIS, DR. GARY
ANKARLO, DR. SCHMIDT,
DR. MEYER, DR. STONEFELD,
CO LOOSE, CO WHEATON,
CO HOLMES, CO TIETGE,
SGT. MEJIA, SGT. FRIEDEL,
SGT. KOELLER, TONIA
ROZMARYNOSKI, MICHAEL
SCHULTZ, JAMES ELSINGER,
LT. CUSHING, LT. REBECCA LENZ,
CAPTAIN STEVENS, CAPTAIN
EICHSTEDT, and KATHY LEMENS,

                    Defendants.

On February 14, 2017, plaintiff Aerion C. King, a state prisoner, filed a *pro se* complaint under 42 U.S.C. § 1983, along with a motion for leave to proceed without prepayment of the filing fee (*in forma pauperis*), a motion for preliminary injunction, and a motion to appoint counsel. (Docket #1, #2, #5, #6). The case was assigned to United States Magistrate Judge William E. Duffin, and the plaintiff consented to jurisdiction by a magistrate judge on February 27, 2017. (Docket #10). The plaintiff later filed a motion for extension of time to pay the filing fee and an unsigned motion for emergency preliminary injunction. (Docket #11, #17). The

defendants have not been served with the complaint and, therefore, have not had an opportunity to consent to magistrate jurisdiction. Accordingly, the case was referred to this Court on July 13, 2017, for screening of the complaint and resolution of the pending motions. After the case was referred, the plaintiff filed a motion to recruit counsel and an amended motion to recruit counsel, (Docket #19, #20), and another inmate filed a motion for leave to appear as next friend for the plaintiff, (Docket #21). All of these matters are now before this Court. The case will be returned to Magistrate Judge Duffin after entry of this Order.

**1. Motions Regarding Filing Fee**

The plaintiff has been assessed and paid an initial partial filing fee of $1.67, *see* 28 U.S.C. § 1915(b)(1), and the court will grant the plaintiff's request to proceed *in forma pauperis*. (Docket #2). The court will deny as moot the plaintiff's motion for extension of time to pay the filing fee because the Court received the initial partial filing fee before the motion. (Docket #3).

**2. Screening of Plaintiff's Complaint**

The Court shall screen complaints brought by prisoners seeking relief against a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Neitzke v. Williams*, 490 U.S. 319, 325 (1989); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d

895, 900 (7th Cir. 1997). The Court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327. "Malicious," although sometimes treated as a synonym for "frivolous," "is more usefully construed as intended to harass." *Lindell v. McCallum*, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

To state a cognizable claim under the federal notice pleading system, the plaintiff is required to provide a "short and plain statement of the claim showing that [he] is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). It is not necessary for the plaintiff to plead specific facts and his statement need only "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). However, a complaint that offers mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). To state a claim, a complaint must contain sufficient factual matter, accepted as true, "that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The complaint's allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citation omitted).

In considering whether a complaint states a claim, courts should follow the principles set forth in *Twombly* by first, "identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. Legal conclusions must be

supported by factual allegations. *Id.* If there are well-pleaded factual allegations, the Court must, second, "assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege that: 1) he was deprived of a right secured by the Constitution or laws of the United States; and 2) the deprivation was visited upon him by a person or persons acting under color of state law. *Buchanan-Moore v. County of Milwaukee*, 570 F.3d 824, 827 (7th Cir. 2009) (citing *Kramer v. Village of North Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004)); *see also Gomez v. Toledo*, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's *pro se* allegations, "however inartfully pleaded," a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Plaintiff's complaint presents claims regarding the mental health treatment he received at Green Bay Correctional Institution and the failure of some of the defendants to prevent the plaintiff from harming himself. Between October and December 2016, the plaintiff had several instances of self-harm.

In the first instance, defendants CO Tietge and Sgt. Koeller watched the plaintiff cut himself and overdose on medication. A policy requires staff members to stay at the cell door until assistance arrives after an inmate expresses self-harm. The plaintiff's life was at risk because these defendants violated that policy; he was allowed to engage in self-harm.

In a second instance, defendant CO Loose left a hard plastic medication cup with the plaintiff while he was on observation status with a restriction on the possession of sharp objects, even after the plaintiff told Loose he was going to cut himself. Loose walked away, and the plaintiff

began to cut himself. Another officer who is not a defendant observed the plaintiff's actions and got him medical attention.

On a third occasion, defendants CO Wheaton and Sgt. Friedel observed the plaintiff taking an overdose of medication and did not stop him. The plaintiff was sent to the emergency room, treated, and sent back to observation. The plaintiff then started to hit his head while defendant James Elsinger watched. The plaintiff believes this was preventable because interventions such as crisis psychological services or emergency transfer to the Wisconsin Resource Center ("WRC") could have been used.

In what seems to be a fourth incident, the plaintiff alleges that defendant Tonia Rozmarynoski failed to protect the plaintiff when he overdosed on medication, cut himself, and banged his head repeatedly. The plaintiff also believes defendants Elsinger and Lt. Cushing subsequently mishandled the incident by not ordering an emergency transfer to the WRC.

On a fifth occasion, defendants Michael Schultz and Kathy Lemens allowed the plaintiff to remain in bed restraints for four hours with a tie-down mechanism cutting the plaintiff's ankle, causing the plaintiff extreme pain.

The plaintiff requested medication related to ADHD multiple times, but the nature of the medication requires a special evaluation. Defendants Dr. Ankarlo and Dr. Schmidt never performed the evaluation, even though a non-defendant Dr. Zirbel has attempted to secure this evaluation and treatment for the plaintiff. Most recently, the plaintiff spoke to defendant Dr. Gary Meyer, who denied the ADHD medications and instead prescribed anti-psychotic medications that the plaintiff believes are inconsistent with his diagnosis and harmful to his system.

The plaintiff's mental health continues to deteriorate while he remains in segregation. He is "sometimes wholly unaware of the consequences of his actions," which result in an extended segregation term. (Docket #1 at 13). According to the plaintiff, all the defendants are aware of the long-term risks of segregation, and a continued stay in segregation is detrimental to the plaintiff's overall mental health. The plaintiff says that he is in need of care and long-term treatment.

The plaintiff seeks monetary and injunctive relief, including a mental health evaluation, permanent mental health housing, and the assignment of a monitor.

Plaintiff's claims implicate his Eighth Amendment rights in several ways. First, to state a failure to protect claim, a plaintiff must allege that the correctional officers knew that he faced a substantial risk of serious harm and deliberately disregarded that risk. *Key v. Kelitwenzew*, 630 Fed. Appx. 620, 623 (7th Cir. 2015) (citing *Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984, 989 (7th Cir. 2012)). The plaintiff may proceed on Eighth Amendment claims against defendants Tietge, Koeller, Loose, Wheaton, Friedel, Elsinger, Rozmarynoski, and Cushing that they failed to protect the plaintiff from harming himself.

Second, the plaintiff may proceed on an Eighth Amendment claim against defendants Schultz and Lemens that keeping the plaintiff in restraints that were causing him pain was deliberate indifference. Prison officials are deliberately indifferent to deprivations suffered by inmates if they have knowledge of the condition but refuse to take steps to correct it. *Dixon v. Godinez*, 114 F.3d 640, 645 (7th Cir. 1997).

Third, the plaintiff may proceed on Eighth Amendment claims against defendants Ankarlo, Schmidt, Meyer, and Stonefeld regarding the

mental health treatment (or lack thereof) that he received. It is well settled that the Eighth Amendment protects the mental health of prisoners no less than their physical health. *See, e.g., Meriwether v. Faulkner*, 821 F.2d 408, 413 (7th Cir. 1987); *Wellman v. Faulkner*, 715 F.2d 269, 272 (7th Cir. 1983). The plaintiff includes specific instances of decisions made by Ankarlo, Schmidt, and Meyer. The Court has also included Stonefeld at this early stage in the litigation because of the plaintiff's allegations of "systemic failure" regarding his mental health treatment.

The plaintiff has not alleged personal involvement by the eleven other defendants named in his complaint: Jon Litscher, Cathy Jess, Warden Scott Eckstein, Steve Schueler, John Kind, Catherine Francois, Lt. Rebecca Lenz, Captain Stevens, Captain Eichstedt, CO Holmes, and Sgt. Mejia. The plaintiff attempts to include these defendants by making statements on pages five and six of his complaint regarding supervisory liability and the failure to train or oversee treatment of inmates. That is not enough.

Section 1983 limits liability to public employees who are personally responsible for a constitutional violation. *Burks v. Raemisch*, 555 F.3d 592, 595-96 (7th Cir. 2009). For liability to attach, the individual defendant must have caused or participated in a constitutional violation. *Hildebrandt v. Ill. Dept. of Natural Resources*, 347 F.3d 1014, 1039 (7th Cir. 2003). With regard to supervisors, the personal responsibility requirement is satisfied if the constitutional deprivation occurs at the supervisor's direction or with the supervisor's knowledge and consent. *Id.* In other words, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Id.* (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).

The Court will dismiss defendants Litscher, Jess, Eckstein, Schueler, Kind, Francois, Lenz, Stevens, Eichstedt, Holmes, and Mejia. The Court also confirms that the defendants who have not been dismissed are only liable for their own participation in the alleged constitutional violations. They are not liable as supervisors.

**3.     Plaintiff's Motions Regarding Injunctive Relief**

The Court will now consider the plaintiff's motions for injunctive relief, including his motion for preliminary injunction, (Docket #5), his unsigned motion for emergency preliminary injunction, (Docket #17), and the supplement to the motion for preliminary injunction, (Docket #22).

To obtain preliminary injunctive relief, the plaintiff must show that (1) his underlying case has some likelihood of success on the merits, (2) no adequate remedy at law exists, and (3) he will suffer irreparable harm without the injunction. *Wood v. Buss*, 496 F.3d 620, 622 (7th Cir. 2007). If those three factors are shown, the Court must then balance the harm to each party and to the public interest from granting or denying the injunction. *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013); *Cooper v. Salazar*, 196 F.3d 809, 813 (7th Cir. 1999). A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam)).

In his original motion for preliminary injunction, (Docket #5), which is unsworn and not supported by any declarations or affidavits, the plaintiff seeks an immediate mental health evaluation and placement at a mental health facility. He concludes generally that his overall mental

health is failing at a traditional prison and refers to his complaint for evidence of his likelihood of success.

The plaintiff's unsworn supplement to his preliminary injunction motion, (Docket #22), asserts that the plaintiff's primary psychologist can provide only crisis care and that the psychological services at Green Bay Correctional Institution cannot be adequate because they have open positions and no supervisor. The plaintiff alleges imminent danger and points to one instance when he was placed in a "tie down bed." (Docket #22 at 2). Once again, the plaintiff seeks an independent mental health evaluation, an immediate transfer to a mental health facility, and an injunction prohibiting the plaintiff from returning to a traditional maximum-security institution.[1] The plaintiff's motion for preliminary relief must be denied.

First, the Court generally will not interfere in matters of prison administration through preliminary injunctive relief. In fact, Congress has expressly cautioned against it. The PLRA provides, in pertinent part, that in considering the need for preliminary injunctive relief, "[t]he court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief[.]" 18 U.S.C. § 3626(a)(2). The Court's reluctance is particularly keen in this case, for despite the plaintiff's complaint that the defendants are

---

[1]The plaintiff also filed an unsigned motion for emergency preliminary injunction, (Docket #17), in which he asserts that he has done additional self-harm by cutting himself with a razor, that he had to be placed in eight-point bed restraints, that he is receiving only limited mental health care (no group therapy or intense individual counseling), and that the lack of programming is due to vacant psychological positions. Although the plaintiff goes into more detail in this unsigned motion and attaches some exhibits, the Court cannot consider an unsigned motion. *See* Fed. R. Civ. P. 11(a). This motion will be denied.

mistreating his mental health disorders, the Court itself lacks expertise in such matters.

Nor is the Court confident that it should, based on the plaintiff's word alone, implement his proposals. The PLRA instructs that "[p]reliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm." *Id.* The plaintiff's opinion on the proper way to simultaneously incarcerate him and treat his mental health does not meet this standard. Faced with a difficult situation in which an inmate seeks to engage in self-harm nearly constantly, the Court will instead defer to the sound judgment of prison officials. *See Bowers v. Pollard*, 602 F. Supp. 2d 977, 993 (E.D. Wis. 2009) (noting that constantly suicidal inmate presented prison officials with "a dilemma with no easy options").

Moreover, the plaintiff has not satisfied the requisite standards for the relief he seeks. His submissions do not meet the high threshold required for the entry of preliminary injunctive relief, since he has not shown a likelihood of success on the merits of his case or that the irreparable harm he fears is likely to occur in the absence of Court intervention. *See D.U. v. Rhoades*, 825 F.3d 331, 335 (7th Cir. 2016); *Winter*, 555 U.S. at 22 (a preliminary injunction requires a "clear showing that [the plaintiff] is entitled to such relief"). The mere possibility of continuing deliberate indifference to his risk of self-harm is not sufficient, standing alone, to warrant such relief.

4.     **Plaintiff's Motions Regarding Counsel**

Next, the Court considers the plaintiff's motions regarding appointment of counsel. The plaintiff filed his first motion to recruit

counsel, (Docket #6), with his complaint, citing 18 U.S.C. § 3006A and arguing that the recruitment of counsel is in the interests of justice. However, § 3006A applies only to criminal cases and petitions for writs of habeas corpus, not civil rights cases. The plaintiff argues that he is mentally ill and unable to complete the filings in this case, and that he relies on another inmate to assist him. The plaintiff further states that his competence is in question and that he would be unable to complete tasks such as evidence gathering and preparing and responding to motions. The plaintiff submits that he has made a reasonable attempt to obtain counsel, but he provides no information regarding those attempts.

In his second motion asking the Court to recruit counsel, (Docket #19), dated July 28, 2017, and filed August 4, 2017, the plaintiff argues that he is mentally ill, that he knows nothing about federal civil practice, and that it is difficult for him to receive inmate assistance. The plaintiff provides a list of five attorneys he contacted on either July 23 or 25, 2017, and notes that "no positive responses have followed." (Docket #19 at 2). The plaintiff suggests that both his cases (this case and Case No. 17-cv-205) are complex and may require expert witnesses, that both cases have merit, and that counsel could make sure that procedures are followed so the cases have a reasonable chance of success.

The plaintiff's amended motion to recruit counsel, (Docket #20), filed August 16, 2017, provides additional legal argument. The plaintiff also asserts that he was a special-needs student within the Wisconsin Department of Corrections and that the chances of him being able to adequately investigate and present the case without assistance are poor. The plaintiff emphasizes his serious mental illness, including explosive and impulse control issues that many times lead to self-harm and inability

to function properly. The plaintiff further details his attempts to contact attorneys and the responses he received.

In a civil case, the Court has discretion to decide whether to recruit a lawyer for someone who cannot afford one. *Navejar v. Iyola*, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C § 1915(e)(1); *Ray v. Wexford Health Sources, Inc.*, 706 F.3d 864, 866-67 (7th Cir. 2013). First, however, the person has to make a reasonable effort to hire private counsel on his own. *Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007). After the plaintiff makes that reasonable attempt to hire counsel, the court then must decide "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it." *Navejar*, 718 F.3d at 696 (citing *Pruitt*, 503 F.3d at 655). To decide that, the Court looks not only at the plaintiff's ability to try his case, but also at his ability to perform other "tasks that normally attend litigation," such as "evidence gathering" and "preparing and responding to motions." *Id.*

The Court will deny the plaintiff's first motion to recruit counsel because he did not provide information regarding attempts to secure counsel on his own. (Docket #6). The Court will deny as moot the second motion, (Docket #19), because it was superseded by the amended motion, (Docket #20), but the Court will consider the arguments set forth together in the second and amended motions as part of the amended motion. Ultimately, though, the Court will deny the plaintiff's amended motion for appointment of counsel at this early stage in the litigation.

At this stage, the Court has before it a complaint that clearly sets forth the plaintiff's claims against the defendants and a number of motions that cite the proper case law and present legal issues in the proper framework. Although the plaintiff indicates (as does non-party

Benjamin Biese, who requests leave to appear as the plaintiff's "next friend") that the plaintiff has received assistance in preparing these documents, there is no indication that the plaintiff will be unable to receive assistance in the future. Additionally, it would be premature for the Court to determine at this stage whether the plaintiff will be able to litigate this case. There is nothing the plaintiff needs to do during this stage of the case until the defendants answer and the Court enters a scheduling order. If later in the case the plaintiff shows he is unable to litigate his case, he is free to file another motion seeking the appointment of counsel that provides the Court with the requisite evidence that he is entitled to such appointment.

5.      **Motion for Leave to Appear as Next Friend**

On August 17, 2017, inmate Benjamin Biese ("Biese") filed a motion asking to appear as "next friend" for the plaintiff in this case. (Docket #21). Biese represents that he has known the plaintiff since May 2015, that he is personal friends with the plaintiff and his family, that he has a genuine interest in a positive outcome for the plaintiff, and that the plaintiff has mental issues that prevent him from assisting himself. Biese indicates that he has been the author of the "actions" in this case, but it is extremely difficult to get actions to the plaintiff to sign and file. According to Biese, the plaintiff is in "dire need of assistance" and a renewed motion to recruit counsel and an updated injunction motion must be filed.

Despite Biese's alleged best interests, the Court will deny this motion because a non-lawyer may not represent a *pro se* litigant before this Court. Under Federal Rule of Civil Procedure 11(a), "[e]very pleading, written motion, and other paper must be signed by at least one attorney of record in the attorney's name—or by a party personally if the party is

unrepresented." Biese may continue to assist the plaintiff, but the plaintiff must review, sign, and submit documents and motions to be filed with the Court.

The Court is also concerned that some of the motions filed in this case (with and without signatures) were not actually signed by the plaintiff, but by Biese for the plaintiff. The plaintiff's signature on his complaint and original motions seems to differ from the signature on the motions filed in August 2017. The Court cautions plaintiff that he must review, sign, and submit all documents filed with this Court. His failure to do so may result in sanctions, including dismissal of this case.

Accordingly,

**IT IS ORDERED** that the plaintiff's motion for leave to proceed without prepayment of the filing fee (Docket #2) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the plaintiff's motion for a preliminary injunction (Docket #5) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the plaintiff's motion to appoint counsel (Docket #6) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the plaintiff's motion for extension of time to pay the filing fee (Docket #11) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that the plaintiff's unsigned motion for an emergency preliminary injunction (Docket #17) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the plaintiff's second motion to recruit counsel (Docket #19) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that the plaintiff's amended motion to recruit counsel (Docket #20) be and the same is hereby **DENIED without prejudice**;

**IT IS FURTHER ORDERED** that Benjamin Biese's motion for leave to appear as next friend (Docket #21) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the following individuals be and the same are hereby **DISMISSED** as defendants in this case: Jon Litscher, Cathy Jess, Warden Scott Eckstein, Steve Schueler, John Kind, Catherine Francois, Lt. Rebecca Lenz, Captain Stevens, Captain Eichstedt, CO Holmes, and Sgt. Mejia;

**IT IS FURTHER ORDERED** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of plaintiff's complaint and this Order are being electronically sent today to the Wisconsin Department of Justice for service on the following state defendants: Dr. Gary Ankarlo, Dr. Schmidt, Dr. Meyer, Dr. Stonefeld, CO Loose, CO Wheaton, CO Tietge, Sgt. Friedel, Sgt. Koeller, Tonia Rozmarynoski, Michael Schultz, James Elsinger, Lt. Cushing, and Kathy Lemens;

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, the defendants who are served shall file a responsive pleading to the complaint within sixty (60) days of receiving electronic notice of this Order;

**IT IS FURTHER ORDERED** that the agency having custody of the plaintiff shall collect from his institution trust account the $348.33 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income

credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action. If the plaintiff is transferred to another institution, county, state, or federal, the transferring institution shall forward a copy of this Order along with the plaintiff's remaining balance to the receiving institution;

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where the plaintiff is confined;

**IT IS FURTHER ORDERED** that the parties may not begin discovery until after the Court enters a scheduling order setting deadlines for discovery and dispositive motions;

**IT IS FURTHER ORDERED** that, pursuant to the Prisoner E-Filing Program, the plaintiff shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. The Prisoner E-Filing Program is mandatory for all inmates of Dodge Correctional Institution, Green Bay Correctional Institution, Waupun Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution. If the plaintiff is no longer incarcerated at a Prisoner E-Filing institution, he will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

The Court further advises the plaintiff that failure to make a timely submission may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties; and

**IT IS FURTHER ORDERED** that this case be and the same is hereby **REFERRED** back to Magistrate Judge William E. Duffin for further proceedings.

Dated at Milwaukee, Wisconsin, this 28th day of September, 2017.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge